## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| RACHEL KATTENBACH, ET AL., | : | |
| | : | |
| Plaintiffs, | : | CASE NO. 23-cv-00187 |
| | : | |
| v. | : | JUDGE MICHAEL H. WATSON |
| | : | |
| HILLIARD CITY SCHOOLS, | : | MAGISTRATE JUDGE |
| | : | KIMBERLY A. JOLSON |
| Defendant. | : | |
| | : | |

## MOTION TO DISMISS COMPLAINT
## BY DEFENDANT HILLIARD CITY SCHOOLS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Hilliard City Schools respectfully moves this Court for an Order dismissing all claims against it, with prejudice, as Plaintiffs' Complaint fails to state a claim upon which relief can be granted.  This Motion is further supported by the attached memorandum, which is incorporated herein by reference.

Respectfully submitted,

_/s/ Jessica K. Philemond_
Jessica K. Philemond, Trial Counsel (0076761)
jessica@scottscrivenlaw.com
Julie C. Martin     (0056163)
julie@scottscrivenlaw.com
Mitchell L. Stith   (0096759)
mitch@scottscrivenlaw.com
SCOTT SCRIVEN LLP
250 East Broad Street, Suite 900
Columbus, OH 43215
(614) 222-8686; Fax (614) 222-8688

*Attorneys for Defendant Hilliard City Schools*

## MEMORANDUM IN SUPPORT

## I.   INTRODUCTION

Plaintiffs, eight (8) parents who claim to have children enrolled in the Hilliard City School District[1] ("District"), bring this seventy-five (75) page Complaint to sound the alarm on what they describe as "widespread confusion throughout the country" concerning Title IX and ask for this Court to intervene by issuing a "federal declaration" to resolve these issues for a national audience. (Complaint paras. 7, 39).  Plainly, Plaintiffs have not alleged an actual case or controversy that would invoke the jurisdiction of the federal courts.

The Hilliard City School District educates more than 16,000 students throughout its three (3) high schools, three (3) middle schools, two (2) sixth-grade schools, and fourteen (14) elementary schools.  The Board maintains a policy prohibiting discrimination on the basis of sex, including sexual orientation and gender identity, and respects the privacy and dignity of each and every one of its students.  See, Board Policy AC – Nondiscrimination.  Likewise, the Board maintains a policy declaring its belief that parent and family involvement is an important part of the educational program and encourages strong home-school partnerships.  See, Board Policy IGBL – Parent and Family Involvement in Education.

With regard to handling student issues of gender identity, the Hilliard City School District follows the controlling law in our jurisdiction that provides that Title IX and the United States Constitution prohibits discrimination on the basis of sexual orientation and gender identity.  *See, e.g., Bd. of Edn. of the Highland Local Sch. Dist. v. United States Dept. of Edn.*, 208 F. Supp. 3d 850 (S.D. Ohio 2016); *Dodds v. United States Dept. of Edn.*, 845 F.3d 217 (6th Cir. 2016).  When

---

[1] At least 3 of the named Plaintiffs do not have students enrolled in the District – two names and one address are not recognized.  Perhaps Plaintiffs have misspelled their names and/or addresses in their pleading.

the parent of a transgender student, or a transgender student, requests accommodations, the relevant school officials will meet with the parent, student, and any other individuals with relevant information. The team will discuss the requested accommodations; the consistency and uniformity of the asserted gender identity; any legal or medical evidence that the gender identity is sincerely held as a part of the student's core identity; and any supports needed to ensure equal access to and equal opportunity to participate in the District's education programs. Accommodations are granted on a case-by-case basis, after considering the circumstances, and parents may or may not be initially involved, depending on student safety and protection of student privacy. There is simply not a "one size fits all" process.

Plaintiffs note that they are not asking for damages as a part of their lawsuit. Indeed, Plaintiffs do not allege injury to any of their children. Instead, Plaintiffs claim fear of future action, alleging that the District's teachers are "activists" encouraged to have "sexual conversations"[2] with children, making their children "vulnerable to abuse." (Complaint, paras. 53, 106). Plaintiffs claim their fear was enflamed by an independent online news site they accessed in October 2022 that published "Transgender Guidelines" that were allegedly circulated within Hilliard City Schools. (Complaint, para. 53). The Complaint alleges at paragraph 53:

> "Hilliard District [sic.] encouragement to teachers to solicit sexual conversations with children is not new. In 2021, the District circulated "Transgender Guidelines" to its principals, saying staff should "start a conversation with students" as early as kindergarten if they notice that student showing "a possible gender identity express [sic.] that is misaligned with the gender assigned at birth that is disruptive to their education."

---

[2] Plaintiffs conflate sexuality and gender identity throughout the Complaint. In addition to referring to conversations that would discuss gender identity as "sexual conversations," Plaintiffs throughout Count Two strangely offer the suggestion that the District "could inform students that trained counselors are available for private conversations about mental health and sexuality." (See Complaint, paras. 53, 122, 123).

(See Complaint, para. 53).  The online article, though, which discussed several school districts in central Ohio **clearly stated that the Transgender Guidelines were published in another school district, <u>not</u> in Hilliard City Schools**. (See website cited at Complaint, para. 53).  The Complaint is riddled with careless mistakes like this one.

Plaintiffs' Complaint alleges two Counts against "Hilliard City Schools."  Count One seeks declaratory judgment under 20 U.S.C. 1232h, the Protection of Pupil Rights Act (PPRA).  Count Two seeks injunctive relief pursuant to 42 U.S.C. 1983 and 1988 for alleged deprivations of the Plaintiffs' constitutional right to direct the upbringing and care for their children.

Plaintiffs' Complaint fails for the following reasons.  First, Plaintiffs have not sued an entity capable of being sued.  It is clearly established under the law that, in order to sue a school district, one must do so by suing the board of education, and Plaintiffs did not.  Second, Plaintiffs lack standing to bring claims in this lawsuit because they have not been harmed.  Third, even if Plaintiffs had standing, their legal claims would fail as a matter of law.  Count One attempts to bring claims under a law for which there is no private right of action.  Count Two seeks relief outside of what is provided by the constitutional right to direct the upbringing and care of children and cites authorities that are purely remedial in nature such that, when no underlying violation occurs, no remedy is warranted.  For all of these reasons, the Complaint must be dismissed, with prejudice.

## II.  LAW AND ARGUMENT

### A.  Defendant Hilliard City Schools is not *Sui Juris*.

Plaintiffs' Complaint must be dismissed because Plaintiffs have failed to name a proper party capable of being sued.  In order to bring suit against a school district, a plaintiff must sue its board of education.  Ohio Revised Code 3313.17 provides, in pertinent part, "[t]he board of

education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued…"  Interpreting this statute, Ohio courts have held, "A board of education, pursuant to O.R.C. Title 33, is the legal entity which is…capable of being sued." *Harris v. Davis Constr. Systems, Inc*., 34 Ohio App. 3d 350, 355 (1986).  Where a school district is named, rather than in its corporate name as a board of education, the lawsuit must be dismissed with prejudice. See, *McGath v. Hamilton Local Sch. Dist*., 848 F. Supp. 2d 831, 838 (S.D. Ohio 2012) ("As an initial matter, the Hamilton Local School District is not an entity which can be sued.  Accordingly, the School district is dismissed with prejudice.")

Here, as was the case in *McGath*, supra, Plaintiffs brought suit against "Hilliard City Schools," rather than the board of education.  Because "Hilliard City Schools" is incapable of being sued, Plaintiffs' Complaint fails as a matter of law and must be dismissed.

### B.  Plaintiffs Lack Standing.

The threshold question in every federal case is whether the court has the judicial power to entertain the suit.  *National Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir.1997) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Article III of the United States Constitution prescribes that federal courts may exercise jurisdiction only where an actual "case or controversy" exists.  See U.S. Const. art. III, § 2.  Courts have explained the "case or controversy" requirement through a series of "justiciability doctrines," including, "perhaps the most important," that a litigant must have "standing" to invoke the jurisdiction of the federal courts.  *Magaw*, 132 F.3d at 279.

The plaintiff bears the burden of establishing standing.  *Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009).  To satisfy the "irreducible constitutional minimum of standing," a plaintiff must establish that: (1) they have suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical; (2) that there is a causal

5

connection between the injury and the defendant's alleged wrongdoing; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted).

The injury prong of the standing doctrine requires that the harm be actual or imminent. In other words, the harm must have already occurred or it must be likely to occur "imminently." *Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130. "Imminent" in this context is defined as "certainly impending," in contradistinction to "allegations of possible future injury." *Clapper,* 133 S.Ct. at 1147. Moreover, the injury must be to a legally cognizable right. *McConnell v. FEC,* 540 U.S. 93 (2003) (overruled on other grounds); *Citizens United v. FEC,* 558 U.S. 310 (2010); *Diamond v. Charles,* 476 U.S. 54, 64 (1986).

The initial dispute here is whether Plaintiffs suffered an injury in fact. The existence of an abstract injury is insufficient for a plaintiff to carry the burden on this element. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Plaintiffs here are claiming exactly this – an abstract injury based upon concerns of possible future injury. They have made no allegation about how their children have been affected by the District's alleged conduct. (See Complaint, para. 10).

There are three scenarios by which Plaintiffs apparently claim they may suffer future injury, but Plaintiffs do not claim that any of these matters have actually injured their children. First, Plaintiffs claim that at least one classroom teacher in the District provided a getting to know you survey to students that included questions asking what pronouns the student preferred in class and outside of class with the school and parents. (Complaint, para. 62). As described in Section D., below, this is not a legal violation. Second, Plaintiffs claim that some teachers wear badges with colored Pride stripes on them that say "I'm Here," in order to show support for individuals in

the LGBTQ+ community, and that there is a QR code on the back that links to inappropriate content.  (Complaint, para. 63).  There is indeed a QR code on the back of the badges that is intended for teachers.  It links to this website: NEA Lesbian, Gay, Bisexual, Transgender, Queer+ Caucus | nea-lgbtqc.org (last accessed January 23, 2023).  As Plaintiffs concede in the Complaint, the Superintendent acknowledged that the content linked from the QR code was not intended for students, and Plaintiffs do not claim that their children ever viewed that content.  Third, Plaintiffs claim that a bulletin board in a school building had definitions of sexual items, providing a display of "sexual content" to children, at school.  (Complaint, para. 64).  Plaintiffs did not allege that any of their children are enrolled in that school building or saw the alleged display.

Because Plaintiffs have not met their burden of pleading an injury in fact, the Complaint must be dismissed.

**C. Plaintiffs' Claims for Violation of Their Fundamental Rights to Direct the Upbringing of Their Children Fail as a Matter of Law Because the U.S. and Ohio Constitutions Do Not Provide A Fundamental Right for Parents to be Informed by Defendant of All Matters Related to Their Children.**

The allegations as pled do not invoke any Constitutional right or protection. Plaintiffs state Defendant "explicitly refuses to clarify its policy on the so-called "outing" – aka informing parents of the mental health conditions teachers elicit from students." Complaint, ¶ 42. The Complaint consists of thread-bare assertions, innuendo, rumor, and spurious legal conclusions. Plaintiffs do not articulate Defendant's policy or practices, and instead claim they have not received answers to questions from Defendant central to the nature of Defendant's policies and practices. In essence, Plaintiff's "factual" allegations can be distilled down to:

1. Some teachers at Defendant's schools wear a badge provided by the National Education Association indicating they were a "safe" person for LGBTQ+ students. This badge contains a QR code on the back that linked to certain objectionable material; however, this material was not intended for consumption by students. Complaint, ¶¶ 47-52.

7

2. Plaintiffs solicited information about Defendant's policy with respect to transgender students. Plaintiffs allege Defendant deflected this question. Plaintiffs' counsel exchanged correspondence with Defendant's legal counsel about Defendant's policies. Defendant "refused to answer the Parent's questions" and "explicitly refused, in writing, to state – directly to a large group of the District's parents – whether three actual occurrences at the District violated their policy or not." Complaint, ¶¶ 57-67.

3. The Defendant considered, but did not adopt, a policy regarding the sharing of health-related information about students with parents. Complaint, ¶¶ 68-70.

4. Plaintiffs include a lengthy account of an alleged scenario involving a District student. The individual involved in that scenario is not a party to this matter. Complaint, ¶¶ 72-105.

What Plaintiffs actually seek is not vindication of any alleged constitutional right. Plaintiffs seek to compel Defendant to answer their questions—in essence, to compel Defendant to respond to interrogatories. Defendant does not dispute that as a public body it has an obligation to respond to public records requests, but the appropriate forum to dispute responses is through the state legal procedure. Further, a public body should engage in regular communication with its constituents about relevant issues, but that does not mean the public body must respond to every hypothetical question posed or that its refusal to engage in a rhetorical back-and-forth rises to the level of a constitutional right actionable in federal court.

Assuming Plaintiffs have cobbled together a cognizable claim implicating more than just a hypothetical parental right, they have not asserted a right protected by the Constitution or that affords them with the remedy they seek. Plaintiffs' core legal theory is that Defendant's alleged "policy" violates their "constitutional rights to direct the upbringing of their children because it undermines the ability of parents to support mental health treatment for their own children." Complaint, ¶ 113. Plaintiffs ask this Court to "declare [their] rights to be informed of any symptoms of gender dysphoria or other mental health condition the District attains from a child; and that any effort to hide this information from parents violates the Parents' rights, including fundamental constitutional rights." Complaint, ¶ 116.

8

Plaintiffs seek relief based on Defendant's alleged violation of their substantive rights under the Due Process Clause of the Fourteenth Amendment "to make decisions concerning the care, custody and control of their children," as recognized by the United States Supreme Court. *Troxel v. Granville,* 530 U.S. 57, 66 (2000). This right, among others, is one "not mentioned in the Constitution," but one that is "deeply rooted in this Nation's history and tradition," and "implicit in the concept or ordered liberty." *Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228, 2242 (2022).

A claim asserting a violation of a substantive right under the Fourteenth Amendment largely hinges upon the proper characterization of the right in question. If the contested action infringes upon a fundamental constitutional right, the action is subject to strict scrutiny and must be narrowly tailored in furtherance of a compelling government interest to pass constitutional muster. Alternatively, government action that does not implicate a fundamental right need only bear a "rational" relationship to a "legitimate" government interest. *See Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 393 (6th Cir. 2005).

Defendant does not dispute the *existence* of parents' fundamental right to make decisions regarding the care, custody, and control of their children. However, Plaintiffs misconstrue the nature and applicability of this right. Courts have reiterated again and again this right is clearly not absolute or unlimited. Specifically, Courts have almost unanimously concluded there is no "fundamental right" for parents to dictate the nature, content, or manner of their children's education in public schools. *Id.* at 394.

By their nature, rights protected as a matter of substantive due process must be narrowly defined and consistent with the doctrine of judicial self-restraint. *Id.* Here, to find a cognizable claim would require this Court to expand a substantive due process right far beyond recognized

and accepted boundaries. Plaintiffs seek to impose upon Defendant a _constitutional_ requirement to inform them of certain symptoms and/or conditions related to their children's mental health and/or gender expression. Complaint, ¶ 116. The _Constitution_ does not provide Plaintiffs a fundamental right to either direct the policies of Defendant, or to receive certain information, even about their own children, from Defendant. Nor does Defendant violate any _Constitutional_ right of Plaintiffs by withholding such information, in limited circumstances, from Plaintiffs about their children. _See, e.g., John & Jane Parents 1 v. Montgomery Cnty. Bd. of Education_, 2022 WL 3544256 (D. Md. August 18, 2022) (Finding parents did not have fundamental right under due process clause to be promptly informed of their child's gender identity when it differed from that usually associated with their sex assigned at birth)[3].

The Sixth Circuit Court of Appeals clearly articulated its standard for assessing the rights of parents with respect to their children's education:

The critical point is this: While parents may have a fundamental right to decide _whether_ to send their child to a public school, they do not have a fundamental right generally to direct _how_ a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities." _Goss v. Lopez,_ 419 U.S. 565, 578 (1975); _Blau v. Fort Thomas Public School Dist.,_ 401 F.3d 381, 395-396 (6th Cir.2005) (emphasis original).

---

[3] Notably, Plaintiffs do not allege with specificity that Defendant has acted in such a way with respect to _their children_, merely that Defendant may withhold information in some situations. In either event, Defendant disputes Plaintiffs' characterization of its actions, but acknowledges they must be accepted as true to the extent they are well-pled for the purposes of this Motion.

The Sixth Circuit is not alone in limiting parents' rights once they have elected to enroll their children in public schools. Where parents have sought to expand the scope of their control of their children's schooling to include a right to dictate the operations of public schools, courts have time and again rejected their efforts. Among others, courts have rejected parental challenges to sex education programs, *see Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir.2005); mandatory health curriculums, *see Leebaert v. Harrington,* 332 F.3d 134, 142 (2d Cir.2003); and mandatory community service programs, *see Herndon v. Chapel Hill–Carrboro City Bd. of Educ.,* 89 F.3d 174, 176 (4th Cir.1996).

Plaintiffs here do not allege Defendant has in any way interfered with their right to direct the education of their children by infringing upon their ability to choose *where* their children are educated. Instead, Plaintiffs find Defendant's alleged policies and practices objectionable or offensive. They enjoy no constitutional right to be free of that which they find offensive. In a recent decision on an almost identical case in Maryland, District Judge Paul Grimm cited to the Ninth Circuit's opinion in *Fields*:

[The Supreme Court's precedent does not provide] support for the view that parents have a right to prevent a school from providing any kind of information—sexual or otherwise—to its students....*Meyer* and *Pierce* do not encompass [the] broad-based right [the parent-plaintiffs seek] *to restrict the flow of information* in the public schools. Although the parents are legitimately concerned with the subject of sexuality, there is no constitutional reason to distinguish that concern from any of the countless moral, religious, or philosophical objections that parents might have to other decisions of the School District—whether those objections regard information concerning guns, violence, the military, gay marriage, racial equality, slavery, the dissection of animals, or the teaching of scientifically-validated theories of the origins of life. Schools cannot be expected to

11

accommodate the personal, moral or religious concerns of every parent. Such an obligation would not only contravene the educational mission of the public schools, but also would be impossible to satisfy. *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Education*, 2022 WL 3544256, *12 (D. Md. August 18, 2022), citing *Fields,* 427 F.3d at 1206 (emphasis original).

Plaintiffs here seek to do exactly what those who came before them in *Fields* and *Montgomery Cnty.* sought—a unilateral line item veto on anything within Defendant's walls they do not like. The Constitution affords no such right.

Defendant recognizes in some very limited circumstances courts have found a public school's actions rise to a level that does in fact violate parents' rights regarding their children. However, in these cases, the courts in question found two important elements dispositive: coercion to undertake a controversial or intimate act and coercion to conceal that act from the student's parents. In one such case, *Arnold v. Board of Educ. of Escambia Cnty., Ala.*, 880 F.2d 305 (11th Cir.1989), the Eleventh Circuit found a violation of the parents' rights where school officials (1) coerced a minor into having an abortion, and (2) compelled her to keep it a secret from her parents.

In *Arnold*, the Court emphasized that the decision to notify the student's parents was the *student's* alone. The Court emphatically declined to "constitutionally mandate[e]" a requirement that school counselors notify parents when their child receives counseling regarding something as intimate as pregnancy. Instead, the Court held "merely that the counselors must not coerce minors to refrain from communicating with their parents. The decision whether to seek parental guidance, absent law to the contrary, should rest within the discretion of the minor. As a matter of common sense, not constitutional duty, school counselors should encourage communication with parents regarding difficult decisions such as the one involved here." *Id.*

Plaintiffs do not allege facts suggesting that any Defendant employee has coerced any specific student to engage in anything amounting to a "controversial or intimate act." Nor do they allege Defendant has coerced any student to keep their mental health conditions and/or gender identity secret from their parents. To the contrary, Plaintiffs quote one of Defendant's responses to their written inquiries as specifically saying the District's "default expectation" is to notify parents and have parent involvement when students exhibit symptoms of gender dysphoria absent exceptions for health and safety, and confidentiality of counseling. Complaint, ¶ 58. *Arnold* clearly articulates there is no constitutional requirement for *Defendant* to notify parents of these types of situations. To avoid violating Plaintiffs' rights, Defendant need merely refrain from coercing students to keep these issues secret from parents. The facts as alleged make no claim that Defendant has actively coerced any children to withhold information from their parents.

Finally, Plaintiffs appear to also invoke the Ohio Constitution, asserting "The Ohio Supreme Court adopted the above doctrine in *Troxel [v. Granville*, 530 U.S. 57, 65 (2000)] pursuant to the Ohio Constitution. See e.g., *State v. Whisner*, 47 Ohio St. 2d 181, 215-128 [sic], 351 N.E.2d 750 (1976)." Complaint, ¶ 110. The claim must fail for the reasons set forth above regarding the same claimed right under the U.S. Constitution.

Moreover, in *Whisner*, the Ohio Supreme Court acknowledged only that "it has long been recognized that the right of a parent to guide the education, including the religious education, of his or her children is indeed a 'fundamental right' guaranteed by the due process clause of the Fourteenth Amendment." *Whisner*, 351 N.E.2d 750, at 769. The controversy in *Whisner* focused on the ability of the Ohio Department of Education to articulate certain minimum standards for nonpublic schools in order to obtain a charter. Because these standards fundamentally changed the nature of those nonpublic schools, the Court determined they so infringed upon the religious

13

philosophy of the schools that they violated the parents' rights to direct the upbringing and education of their children. However, as with the relevant federal authorities on this issue, the government action in question fundamentally interfered with the choice of parents *where* to send their children to school by altering the nature of private religious school curriculum. The Court did not determine, as Plaintiffs' assert here, that parents enjoy a fundamental right to control the operations and actions of *public* schools, once they have elected to enroll their children in them.

Plaintiffs accordingly fail to state any claim under either the U.S. or Ohio Constitutions for which relief can be granted.

**D.  The PPRA (20 U.S.C. 1232h) Provides No Private Cause of Action.**

Plaintiffs allege in Count I that "[t]he practices of the District, described in the Statement of Facts, also violate 20 U.S.C. 1232h which prohibits requiring a student to be required to undergo analysis or evaluation of items such as sex behaviors or attitudes, mental or psychological problems of the student or student's family, and religious practices." Complaint ¶ 111. Plaintiffs further allege these practices "also violate parental notification requirements" under the same statute. Complaint, ¶ 112.

This claim must fail because the PPRA contains no private right of action. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (explaining that a plaintiff must have a right of action to enforce federal law). A plaintiff must demonstrate "a cause of action under the statute"—in other words, that the plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue." *Lexmark*, 572 U.S. at 128. A private right of action exists under a federal statute only if created by Congress. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020).

14

The PPRA on its face contains no private cause of action. 20 U.S.C. 1232h(e) – "Enforcement," provides only: "The Secretary shall take such action as the Secretary determines appropriate to enforce this section, except that action to terminate assistance provided under an applicable program shall be taken only if the Secretary determines that--(1) there has been a failure to comply with such section; and (2) compliance with such section cannot be secured by voluntary means." The statute contains no provision allowing for an individual to bring a claim in federal court to enforce the requirements of the statute. Indeed, on the rare occasions courts have been asked to do so, they have declined, finding no intention by Congress to permit vindication of the PPRA's protections through litigation. *See Ashby v. Isle of Wight Cnty. School Bd.*, 354 F.Supp.2d 616, 623 (E.D. Va. 2004) ("These statutes [FERPA and PPRA] do not create private causes of action"); *C.N. v. Ridgewood Bd. of Educ.*, 146 F.Supp.2d 528, 535 (D.N.J.2001) ("it must be noted that indeed neither the PPRA nor the FERPA provide a private right of action"); *see also Montgomery Cnty. Bd. of Educ., supra* ("because the Plaintiff Parents have no private right of action under [FERPA and the PPRA], their request for declaratory relief likewise fails").

Moreover, Plaintiffs' PPRA claim must also fail as a matter of law because it is inapplicable to the "survey" to which Plaintiffs allege Defendant required students to submit. The restrictions of the PPRA do not apply to *all* surveys or questionnaires administered in the public schools. To the contrary, 20 U.S.C. 1232h(b) provides, "[n]o student shall be required, *as part of any applicable program*, to submit to a survey, analysis, or evaluation that reveals information concerning" an enumerated list of topics (e.g., mental or psychological problems of the student or student's family, sex behavior or attitudes). The key modifier in this clause is "as part of any applicable program." For these purposes, an "applicable program" is "any program for which the Secretary or the Department has administrative responsibility as provided by law or by delegation

of authority pursuant to law." 20 U.S.C. 1221(c)(1). Courts have therefore concluded, "[t]he text of the statute and the regulations implementing it indicate that Section 1232h was meant to apply only to programs administered by the Secretary of Education." *C.N. v. Ridgewood Bd. of Educ.*, 146 F.Supp.2d 528, 537 (D.N.J.2001), citing *Herbert v. Reinstein,* 976 F.Supp. 331, 340 (E.D.Pa.1997).

Here, the Complaint does not allege the surveys or questionnaires Defendant allegedly required were part of any "applicable program" administered by the U.S. Department of Education. While Plaintiff does include factual allegations regarding the Department's interpretation and promulgation of Title IX regulations related to student gender identity and expression, it does not relate those allegations to Defendant's alleged conduct. Plaintiffs do not allege the Department required or directed Defendant to survey students regarding their preferred names or pronouns.

Accordingly, all claims under Count I should be dismissed as a matter of law.

### E. Because Plaintiffs' Claims in Count I Fail as a Matter of Law, Count II Must also be Dismissed.

In Count II, Plaintiffs seek injunctive relief pursuant to 42 U.S.C. 1983, 42 U.S.C. 1988, 28 U.S.C. 2202, 28 U.S.C. 1343, and Fed. R. Civ. P. 65. As an initial matter, 28 U.S.C. 1343 is a jurisdictional statute. It does not, itself, provide a basis for relief, but instead grants the Court jurisdiction over certain controversies. Moreover, the remaining statutes, and FRCP 65 are entirely remedial in nature. They provide no substantive protections or rights themselves, but instead are vehicles by which a party may seek vindication of other rights articulated elsewhere either in the Constitution or federal law.

Plaintiffs allege Defendant's "activities, as described in the Statement of Facts above, deprive the Parents—under color of law—of their constitutional right to direct the upbringing of, and provide care for, their children. Meanwhile, these activities lack any justifiable educational or

governmental purpose. Thus, the district is acting unconstitutionally and beyond the scope of any authority of state or local law." Complaint, ¶ 119. However, as set forth above, Plaintiffs' Complaint fails to allege any violations of any substantive right articulated in the Constitution or federal law. Because Plaintiffs fail to assert the violation of any protected right, the remedial powers of Section 1983, Section 1988, Section 2202, and FRCP 65 cannot be invoked to vindicate such violations. *See, e.g., Gonzaga University v. Doe*, 536 U.S. 273, 284 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights "secured" elsewhere, i.e., rights independently "secured by the Constitution and laws" of the United States. [O]ne cannot go into court and claim a violation of § 1983—for § 1983 by itself does not protect anyone against anything" (internal citations omitted)).

Accordingly, because Plaintiffs fail to assert Defendant has violated any right protected by the Constitution or federal law, Plaintiffs' requests for remedial action under the identified authorities fail as a matter of law.

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs' claims fail as a matter of law and the Complaint should be dismissed, with prejudice.

Respectfully submitted,

 */s/ Jessica K. Philemond*
Jessica K. Philemond, Trial Counsel (0076761)
jessica@scottscrivenlaw.com
Julie C. Martin      (0056163)
julie@scottscrivenlaw.com
Mitchell L. Stith    (0096759)
mitch@scottscrivenlaw.com
SCOTT SCRIVEN LLP
250 East Broad Street, Suite 900
Columbus, OH 43215
(614) 222-8686; Fax (614) 222-8688
*Attorneys for Defendant Hilliard City Schools*

17

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served this 23rd day of January, 2023, via electronic mail service and the Court's electronic filing system upon all counsel of record.

   _/s/ Jessica K. Philemond_
   Jessica K. Philemond, Trial Counsel (0076761)