UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Rachel Kaltenbach**, *et al.*,

    **Plaintiffs,**　　　　　　　　　　　Case No. 2:23-cv-187

    v.　　　　　　　　　　　　　　　Judge Michael H. Watson

**Hilliard City Schools**, *et al.*,　　　　　Magistrate Judge Jolson

    **Defendants.**

## OPINION AND ORDER

Hilliard City Schools Board of Education (the "District"), Beth Murdock, Kara Crowley, Nadia Long, Zach Vorst, and Brian Perry (collectively with the District, "Defendants") move to dismiss several claims for lack of standing. ECF No. 31. Rachel Kaltenbach, Daniel Kamento, Sarah Kamento, Bethany Russell, Jennifer King, Tanya Ciomek, Leizl Zirkle, Lisa B. Chaffee, Danae Gordin (collectively, the "In-District Plaintiffs"), and D.S. (collectively with the In-District Plaintiffs, "Plaintiffs") oppose. ECF No. 35. For the following reasons, Defendants' motion is **GRANTED**.

### I.　　FACTS

This case arises out of certain policies (the "Policies") the District allegedly has around LGBTQ+ issues. *See generally*, Sec. Am. Compl., ECF No. 40. In short, Plaintiffs allege that, if the District believes a parent holds anti-LGBTQ+

views, the District will not inform that parent if the parent's child shows any sign of an LGBTQ+ identity. *Id.*

The Policies allegedly work as follows: The District's "default" is that it will tell parents anything important about their children, including things related to LGBTQ+ issues. *E.g.*, *id.* ¶ 53. However, there is a "health and safety" exception to this default. *E.g.*, *id.* Separately, the District labels people who do not support LGBTQ+ youth as "unsafe."[1] *E.g.*, *id.* Plaintiffs allege that when a parent is labelled "unsafe," the "health and safety" exception applies and, therefore, the parent will not be told important information. *E.g.*, *id.* Thus, Plaintiffs allege, if a child reports that the child is struggling with LGBTQ+-related issues, and if that child's parent has been labelled "unsafe," that parent will never be informed about the child's struggles. *E.g.*, *id.*

Plaintiffs allege that these fears came to pass for one Plaintiff, D.S. *Id.* ¶¶ 7–20. D.S.'s child, who was assigned female at birth, was struggling with mental health issues during eighth and ninth grade. *Id.* At some point, employees at the child's school started using a male name and male pronouns to refer to the child, apparently believing that doing so would help with the child's mental health. *Id.* D.S.'s child attempted suicide but, fortunately, survived and has received professional mental health care. *Id.* No one at the school told D.S.

---

[1] Or, at least, the District does not label people with anti-LGBTQ+ views as "safe." It is unclear whether anyone affirmatively receives the label "unsafe." Construing the allegations in the light most favorable to Plaintiffs, however, some persons are labelled "unsafe."

that employees referred to the child with male pronouns, until after the suicide attempt. *Id*. D.S. has since removed the child from the District. *Id*. ¶ 2. D.S. does not allege whether the District labelled her as "unsafe" or perceived her as having anti-LGBTQ+ views. *See generally*, *id*.

In addition, Plaintiffs allege that school employees may have exposed students to graphic sexual material. *Id*. ¶¶ 36, 135–51. Some school employees wore a badge (the "Badge") that communicates that the wearer supports LGBTQ+ youth. *Id*. On the back of the badge, there is a QR code that, if scanned, brings up resources and materials related to LGBTQ+ issues. *Id*. At least some of these resources allegedly contain sexually explicit material. *Id*.

Based on these allegations, Plaintiffs assert several claims under the United States Constitution and Ohio law. *See generally*, *id*.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject-matter jurisdiction.[2] Without subject-matter jurisdiction, a federal court lacks authority to hear a case. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 91 (2017) (citation omitted). "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under

---

[2] Although Defendants style their motion as a motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), the Court construes the motion as proceeding under Rule 12(b)(1) because Defendants seek dismissal for lack of standing.

Rule 12(b)(1) "is a challenge to the sufficiency of the pleading itself," and the trial court therefore takes the allegations of the complaint as true. *Id.* (citation omitted). To survive a facial attack, the complaint must contain a "short and plain statement of the grounds" for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016) (internal quotation marks and citations omitted).

A factual attack is a "challenge to the factual existence of subject matter jurisdiction." *Ritchie*, 15 F.3d at 598. No "presumptive truthfulness applies to the factual allegations[.]" *Id.* (citation omitted). When examining a factual attack under Rule 12(b)(1), "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (internal quotation marks and citation omitted).

### III.   ANALYSIS

Defendants move to dismiss some of Plaintiffs' claims for lack of standing. Pursuant to Article III of the United States Constitution, federal jurisdiction is limited to "cases" and "controversies," and standing is "an essential and unchanging part of" this requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). If a plaintiff lacks standing, then the federal court lacks jurisdiction. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). Thus, standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Article III standing has three elements. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id*. (cleaned up). Third, it must be likely that the injury will be "redressed by a favorable decision." *Id*. at 561 (quotation marks and citation omitted).

The burden is on the party invoking federal jurisdiction to demonstrate Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) (citing *Lujan*, 504 U.S. at 561). Each element of standing must be supported with the "manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561 (citing cases).

**A.     In-District Plaintiffs**

In-District Plaintiffs assert four claims for declaratory relief (the "Claims"). In each claim, the In-District Plaintiffs allege that the Policies violate different rights: (1) Claim IV, freedom of conscience; (2) Claim V, familial integrity; (3) Claim VI, freedom of speech; and (4) Claim VII, due process. Sec. Am. Compl. ¶¶ 86–134, ECF No. 40. In-District Plaintiffs also assert a "claim" for injunctive relief related to the Badge, Claim VIII. *Id*. ¶¶ 135–51.

In-District Plaintiffs lack Article III standing to pursue the Claims because they have not alleged an injury-in-fact. To establish injury-in-fact, a plaintiff must

point to an injury that is "concrete—that is, real, and not abstract." *TransUnion LLC*, 594 U.S. at 424 (cleaned up).  To reiterate: An "[a]bstract injury is not enough." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, (1983).  Rather, a plaintiff "must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct[.]" *Id*. at 101–02 (quotation marks and citations omitted).  If a plaintiff asserts a risk of future harm, she must show that "threat of injury is both real and immediate, not conjectural or hypothetical." *Id*. at 102 (cleaned up).

In-District Plaintiffs' theory for the Claims is as follows: if the District believes a parent does not support LGBTQ+ youth, the District labels that parent as "unsafe."  If an "unsafe" parent's child expresses or questions an LGBTQ+ identity (or makes statements suggesting a mental illness), the District may decide that the fact that the parents is "unsafe" warrants a "health and safety" exception to the default policy of telling parents important things about their children.  If that happens, the District may offer the child mental health treatment without consulting the parents.  These actions, allege In-District Plaintiffs, would violate their rights to freedom of conscience, familial integrity, and freedom of speech.  Further, because the District allegedly does all these things under impermissibly vague Policies, the District violates the parents' due process rights.

In other words, *if* a child expresses or questions an LGBTQ+ identity (or shows signs of a mental illness) to a school official, and *if* the parent has, or is perceived to have, anti-LGBTQ+ views, and *if* the school knows about those

views, and *if* the combination of those facts mean the school does not tell the parent about the child's sexual-identity comments, and *if* the school gives the child mental health treatment without the parent's consent or knowledge, *then* the parent's rights are violated because the parent is being "punished" for his or her beliefs and speech, is deprived of the ability to make important health decisions for the child, and has suffered these deprivations under impermissibly vague Policies.

The number of "ifs" in the preceding paragraph show why In-District Plaintiffs lack standing. In-District Plaintiffs offer no allegations that their children have told or will tell the school that they are (or may be) LGBTQ+ or that the children show any signs of mental illness. *See generally*, Sec. Am. Compl., ECF No. 40. Because In-District Plaintiffs have not plausibly alleged that their children have reported or will report such issues to school officials, they have likewise not plausibly alleged that they will suffer any injury as a result of what the District might do in response to such a report.

Nor do In-District Plaintiffs allege that they have (or are perceived to have) anti-LGBTQ+ views.[3] *Id*. As a result, In-District Plaintiffs have not plausibly alleged that they were or will be labelled "unsafe" or, by extension, that they will

---

[3] True, In-District Plaintiffs allege that they have received "backlash" for filing this lawsuit, but they do not elaborate on what that backlash is or, more importantly, whether that backlash includes being perceived by the District as having anti-LGBTQ+ views. Indeed, Plaintiffs allege that the backlash is *not* coming from the District but is coming instead from "certain activists in the community." *Id*. ¶ 21.

suffer any injury stemming from how the District interacts with parents it believes are "unsafe."

Relatedly, In-District Plaintiffs have not alleged that they do anything else that might earn them the label of "unsafe." One of In-District Plaintiffs' theories is that the District might decide a parent is "unsafe" because of a parent's religion, political view, or associations, and that this decision (and the consequences of it) would violate their First Amendment rights. *Id*. ¶ 111–127. In-District Plaintiffs do not allege that they have any of the religious or political views, associations, or anything else that might lead the district to believe they are "unsafe" or otherwise anti-LGBTQ+. *See generally, id*. Neither have Plaintiffs alleged that they want to participate in any of those things but are chilled from doing so because of the District's Policies. *Id*. Thus, because In-District Plaintiffs have not alleged that *they* engage in—or want to engage in—any First Amendment activities that might make the District label them as "unsafe," they have not alleged any injury related to the same.

In sum, because In-District Plaintiffs do not allege that their children have told, nor that they will—or even *may*—tell school officials that they are LGBTQ+ or are experiencing symptoms of mental illness, and because In-District Plaintiffs do not allege that they have any views or participate in any activities that could earn them the label of "unsafe," In-District Plaintiffs do not allege an injury-in-fact.

Accordingly, In-District Plaintiffs' Claims IV, V, VI, and VII are dismissed without prejudice for lack of standing.[4]

In Claim VIII, In-District Plaintiffs assert a "claim" for injunctive relief. In-District Plaintiffs seek an injunction enjoining the District from allowing school employees to wear the Badge. In-District Plaintiffs, apparently, fear that their children will scan the QR Code and be exposed to sexually explicit material. However, In-District Plaintiffs do not allege whether any of their children's teachers—or anyone at their children's schools—wear the Badge. Nor have In-District Plaintiffs alleged that they have any reason to believe that their children will scan the QR code if they see a Badge. Therefore, In-District Plaintiffs have not plausibly alleged any risk that their children will be exposed to the sexually explicit material because of the Badge. As a result, In-District Plaintiffs have not plausibly alleged an injury-in-fact for Claim VIII.

For these reasons, In-District Plaintiffs have not alleged an injury-in-fact for any of their claims. Therefore, all of their claims must be dismissed for lack of standing.

---

[4] In-District Plaintiffs seem to believe that Article III standing has different requirements in declaratory judgment actions. That belief is misplaced. *See, e.g.*, *Saginaw Cnty., Michigan v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020) ("Even when a claimant seeks declaratory relief, [ ] he must satisfy the prerequisites of the Declaratory Judgment Act and Article III's standing baseline."). Although In-District Plaintiffs are correct that they do not have to wait for an *actual* injury before filing suit, they must at least allege a non-speculative imminent injury. *See Lyons*, 461 U.S. at 101–02 (citations omitted).

**B.     D.S.**

D.S. asserts three claims for damages arising out of the way the District handled her child's mental health issues. In two of those claims, D.S. alleges that Defendants violated D.S.'s constitutional rights to familial integrity and freedom of conscience; D.S. also asserts intentional infliction of emotional distress. Sec. Am. Compl. ¶¶ 55–85, ECF No. 40. Defendants do not seek to dismiss those claims and, therefore, they will proceed.

However, D.S. also asserts several claims for declaratory and injunctive relief (the "Prospective Claims"). In those claims, D.S. seeks a declaration that Defendants violated D.S.'s rights to freedom of conscience, familial integrity, freedom of speech, and due process, and asks the Court to enjoin some of the allegedly wrongful behavior and policies.

To the extent the Prospective Claims are not duplicative of D.S.'s first three claims, they must be dismissed for lack of standing. Declaratory and injunctive relief are both forms of prospective relief. *Cf. George-Khouri Fam. Ltd. P'ship v. Ohio Dep't of Liquor Control*, No. 04-3782, 2005 WL 1285677, at *3 (6th Cir. May 26, 2005) (defining, in passing, "prospective relief" as relief that is "injunctive or declaratory" (citing cases)). D.S. has removed her child from the District and, thus, there is no risk that the Policies will cause any future injuries (or effects of any kind) to D.S. or her child. As a result, D.S. lacks standing to seek prospective relief. *Cf. Mikel v. Quin*, 58 F.4th 252, 258–60 (6th Cir.), *cert. denied sub nom. Mikel v. Nichols*, 143 S. Ct. 2660 (2023) (holding that a former

foster parent lacked standing for prospective relief related to policies and practices for foster homes when she was no longer a foster parent).  Accordingly, Claims IV–VIII, as asserted by D.S., are dismissed for lack of standing.

### IV.     CONCLUSION

For these reasons, Defendants' motion is **GRANTED**.  D.S.'s Claims I, II, and III shall proceed through litigation; all other claims are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

The Clerk shall terminate ECF No. 31.

**IT IS SO ORDERED.**

                                        */s/ Michael H. Watson*
                                        **MICHAEL H. WATSON, JUDGE**
                                        **UNITED STATES DISTRICT COURT**