No. 24-3336

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 27, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| RACHEL KALTENBACH, et al., | ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | )     O R D E R |
| | ) |
| HILLIARD CITY SCHOOLS, et al., | ) |
| | ) |
| Defendants-Appellees. | ) |

Before: CLAY, THAPAR, and DAVIS, Circuit Judges.

Plaintiffs—several parents of children who are currently enrolled in the Hilliard City School District (the "In-District Plaintiffs"), and one parent, D.S., of a student who was previously enrolled in the school district—appeal the district court's dismissal, without prejudice, of the In-District Plaintiffs' claims and all but three of D.S.'s claims for lack of standing. The Clerk ordered Plaintiffs to show cause why the appeal should not be dismissed for lack of jurisdiction. Plaintiffs respond, and Defendants Hilliard City Schools and its Board of Education (collectively, the "District") reply.

We have jurisdiction over appeals from final judgments of the district court. 28 U.S.C. § 1291. In the absence of a certification by the district court, an order or decision "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action." Fed. R. Civ. P. 54(b). Three of D.S.'s claims remain pending in the district court, which

did not grant certification under Rule 54(b) for Plaintiffs to appeal its dismissal order.  Plaintiffs therefore attempt to invoke the collateral order doctrine, which vests us with jurisdiction over an appeal from a non-final order if it conclusively determines the disputed question, resolves an important issue completely separate from the merits, and is effectively unreviewable on appeal from a final judgment.  *Will v. Hallock*, 546 U.S. 345, 349 (2006); *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949).

We have held that standing fails the final prong of the collateral order doctrine inquiry; thus, we lack jurisdiction to review a non-final order on the basis that it granted or denied standing.  *Fox v. Saginaw Cnty.*, No. 21-1108, 2022 WL 523023, at *4 (6th Cir. Feb. 22, 2022) (holding that we had jurisdiction over the portion of a district court order denying sovereign immunity, but not over the portion of the order holding that the plaintiff had standing); *cf. Child.'s Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1418–19 (6th Cir. 1996) (Batchelder, J., concurring) (considering standing as a necessary threshold inquiry to other appealable issues notwithstanding that it fails the third prong of the *Cohen* test and might be unreviewable if it was the only issue raised on appeal).  Because Plaintiffs appeal a non-final order dismissing their claims only on standing grounds, the collateral order doctrine does not apply.

Accordingly, the appeal is **DISMISSED** for lack of jurisdiction.

THAPAR, Circuit Judge, concurring.  The allegations in this case are beyond troubling.  The plaintiffs say that a school district in Ohio encouraged young children to become transgender— and then lied to parents about what was happening.  They also say this decision wasn't just the act of a rogue educator; it was district policy.  For one child, T.S., the ramifications were tragic:  she attempted to commit suicide.  And she's getting her day in court.

Because the District hasn't been forthcoming about what is taking place inside its walls, other parents sued to protect their children, too.  While the complaint paints a detailed and stark picture of what happened to T.S., it leaves these other parents as an afterthought.  Because of this, the district court found that those plaintiffs lacked standing.  In other words, the complaint doesn't explain how any injury to these plaintiffs is imminent.  And it's well settled that we don't have jurisdiction to review this determination until the case is complete.

Of course, this procedural defect in no way diminishes the gravity of the plaintiffs' allegations.  And while this case will ultimately make its way to us, for some that might be too late.  Thus, plaintiffs would be wise to amend their allegations below so their case can go forward.

I.

According to the complaint, this case began when one of the plaintiffs' daughters, an eighth-grader named T.S., began suffering from mental health issues.  Her mother, D.S., did what any parent would do:  she tried to get help for her child.  But T.S.'s school had a different plan.  The plaintiffs assert that some teachers in the Hilliard City School District concluded that T.S. was experiencing so-called "gender dysphoria."  Without asking T.S.'s parents, the school decided, on its own, that it would start treating T.S. as a male.  The plaintiffs say the teachers "convinced T.S. she was a boy in a girl's body" and had her "adopt a new name and identity as the opposite sex."  R. 40, Pg. ID 467.  The school's decision had tragic consequences:  T.S. attempted suicide at school.

But this distressing series of events is about more than the school's "remedy" for T.S.'s struggles.  It's also about the school's deception.  While T.S. was suffering, the school allegedly misled her parents about the well-being of their daughter.  The school treated T.S. as a girl whenever she was around her parents, hoping to hide from T.S.'s family the new identity that the

school had concocted for her. Indeed, T.S.'s mother only found out about her daughter's alleged transgender status when the school sent T.S. a postcard using a male name. Had T.S.'s parents known about the school's actions, they could've intervened and sought medical help for their daughter. But the school stripped them of that possibility.

After T.S. attempted suicide, a group of parents discovered the District's policy of deception. The parents report that, if the Hilliard City School District thinks a parent isn't supportive enough of what it calls "LGBTQA+ youth or issues," the district will label that parent "unsafe." And if a parent is tarred with that label, the school will withhold important information from the parents, such as whether the school thinks the child should be "transitioned" from one sex to the other. Allegedly, the school even asked students for their preferred pronouns while at school and their preferred pronouns around their parents. The parents also learned that teachers wore badges with QR codes that students—who are young children—could scan to access pornographic content and obscene material instructing children about sexual acts. All told, the parents learned of many appalling activities at the schools with which they had entrusted their children.

So, D.S. and other parents filed a lawsuit. By the time she sued, D.S. had taken T.S. out of Hillard schools. But the other parents still had children in the school district. In a combined complaint, D.S. and the parents raised eight claims.

The first three involved only D.S. She argued that the district's decision to secretly "diagnose[]" and "treat[]" her child for a mental health issue violated D.S.'s rights to (1) familial integrity and (2) freedom of conscience to make decisions about her daughter. R. 40, Pg. ID 477–80. She also alleged that the District caused intentional or reckless infliction of emotional distress.

D.S. also joined with the rest of the in-district parents to bring five additional claims. The first four of these claims requested declaratory judgments that the District's policies violated the parents' rights to freedom of conscience, familial integrity, freedom of speech, and due process. The last claim requested an injunction against teachers' ability to display QR codes that led students to explicit materials.

The district court dismissed counts four through eight for both D.S. and the in-district parents. The court said that because D.S. had removed her daughter from the school, she no longer faced harm from the challenged policies. And the court said the in-district parents hadn't alleged an injury-in-fact. In the court's view, that meant that D.S. and the in-district parents lacked Article III standing to bring these claims.

In dismissing the parents' claims, the court highlighted that the complaint said very little about the in-district parents. As the district court saw it, the parents never alleged that their children would show signs of mental illness or would be subjected to the school's gender-transitioning efforts. For that reason, the court suggested that the parents hadn't alleged the sort of injury that's necessary to support a federal lawsuit. And, while parents are right to be concerned about the conduct at their child's school, to succeed in court, they must tie their concern to a specific and individualized harm. For example, while the parents alleged in paragraph 21 that they had "identified other Hilliard parents who will be witnesses in this matter, who have similar stories" to T.S., they never said whether those particular plaintiffs with "similar stories" were among the plaintiffs to the suit. *Id.* at Pg. ID 468. Likewise, while the complaint said that the parents were concerned about the district's policies, it never explained that their children would likely be subjected to those policies. Thus, the district court found there wasn't enough to show why these specific parents were harmed by these specific policies.

So the court held that these plaintiffs lacked standing. But the court allowed three of D.S.'s individual claims to remain.

The plaintiffs appealed.

## II.

Our order today does not decide the merits of the parents' claims, which raise serious questions about the district's policies. Instead, we decide only a limited question: whether this court has jurisdiction over a non-final order of a district court.

We do not. Why? Intermediate appellate courts can hear appeals only from final judgments. 28 U.S.C. § 1291; *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949). And there's no final judgment here. Instead, the court dismissed only some of the lawsuits' claims.

Faced with this final judgment rule, the plaintiffs argue they fall into an exception called the collateral order doctrine. Under the collateral order doctrine, we can hear an appeal if the appealed order conclusively determines the disputed question, resolves an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). The plaintiffs say a partial dismissal for lack of standing falls within that exception.

But the collateral order doctrine doesn't let us rule on plaintiffs' arguments at this stage of the litigation. To be sure, the court's dismissal of some of the action's claims for lack of standing determines a disputed question and resolves an important issue separate from the merits. *See Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1418 (6th Cir. 1996) (Batchelder, J., concurring). But the resolution of the standing question is not "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468. Once the

district court reaches a final judgment, we will be able to review the court's standing determination and, if necessary, reverse.

Further, we have previously held (albeit in an unpublished opinion) that we lack jurisdiction to review a district court's order on standing. *Fox v. Saginaw County*, No. 21-1108, 2022 WL 523023, at *4 (6th Cir. Feb. 22, 2022). Our sister circuits agree that a district court's ruling on standing isn't immediately appealable. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 474–75 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Thus, we can't review the district court's determination that some of the parents lack standing.

### III.

That doesn't leave the plaintiffs without a remedy. Federal Rule of Civil Procedure 15(a)(2) states that courts should grant leave to amend a complaint "when justice so requires." Here, the plaintiffs have alleged an injustice, both as to D.S. and to the other parents. If ever there were a case ripe for amending a complaint, this is it.

In considering how to proceed, the plaintiffs might consider a few things. First, D.S. still has three live claims. That means she will get her day in court. Second, while the district court dismissed the other parents' claims for lack of standing, it did so only because of defects in this version of the plaintiffs' complaint. The district court just said the parents hadn't explained that the school was likely to deem *them* unsafe. So the in-district plaintiffs have a choice: either (1) wait for final judgment in this suit, and then bring their appeal about the district court's standing determination back to this court or (2) amend their complaint to provide more detail about what happened to them, so they can avoid dismissal for lack of standing in the first place.

In reworking their complaint, the plaintiffs would be wise to pay attention to the rules of standing.  As the Supreme Court has explained, any alleged threatened injury must be certainly impending.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Here, the district court found that the complaint didn't adequately explain why the plaintiffs were likely to suffer from the policies.  In other words, it said that the plaintiffs' allegations were too vague for the court to conclude they raised the specific type of certainly impending injury the Supreme Court requires.

To determine whether an injury meets that bar, a court would ask several questions:

1. Did the parents plausibly plead that their specific children are at risk of the school thinking they have gender dysphoria?

2. Did the parents plausibly plead that they have "similar stories" to D.S., meaning that the District denied them information and tried to transition their child?

3. Did the parents plausibly plead that they have specific views that that the school was likely to deem "unsafe," meaning that the school is likely to hide information about their children from them?

4. Did the parents plausibly plead that their particular schools were enforcing policies like those that D.S. and T.S. faced?

Answers to these questions would help the court discover why these plaintiffs face the harms they describe.  They're designed to get at the level of specificity that the plaintiffs alleged when they recounted what happened to T.S.  And if the plaintiffs revise their pleadings, it shouldn't be hard for them to establish Article III standing.

Indeed, the court's primary concern was that the in-district parents "have not alleged that they do anything . . . that might earn them the label of 'unsafe.'"  R. 43, at 12.  So it dismissed for lack of standing.  But that determination does not doom future plaintiffs who answer such questions in their complaints.

No. 24-3336
-9-

\*   \*   \*

Because the collateral order doctrine forecloses our review, I concur in the order.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk